IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRENDA G. JOHNSTON,                    :
                                       :
        Plaintiff,                     :
                                       :
vs.                                    :      CIVIL ACTION 11-0692-M
                                       :
MICHAEL J. ASTRUE,                     :
Commissioner of Social Security,:
                                       :
        Defendant.                     :


MEMORANDUM OPINION AND ORDER


        In this action under 42 U.S.C. § 405(g), Plaintiff seeks

judicial review of an adverse social security ruling which

denied a claim for disability insurance benefits (Docs. 1, 13).

The parties filed written consent and this action has been

referred to the undersigned Magistrate Judge to conduct all

proceedings and order the entry of judgment in accordance with

28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18).  Oral

argument was waived in this action (Doc. 19).  Upon

consideration of the administrative record and the memoranda of

the parties, it is **ORDERED** that the decision of the Commissioner

be **AFFIRMED** and that this action be **DISMISSED**.

        This Court is not free to reweigh the evidence or

substitute its judgment for that of the Secretary of Health and

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239
(11th Cir. 1983), which must be supported by substantial
evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The
substantial evidence test requires "that the decision under
review be supported by evidence sufficient to justify a
reasoning mind in accepting it; it is more than a scintilla, but
less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918
(11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205
(D. Md. 1982).

At the time of the administrative hearing, Plaintiff was
forty-two years old, had completed four years of college
education (Tr. 171), and had previous work experience as a
janitor and a nursing assistant (Tr. 48).  In claiming benefits,
Plaintiff alleges disability due to degenerative disc disease,
bipolar disorder, and obesity (Doc. 13 Fact Sheet).

The Plaintiff filed a protective application for disability
benefits on July 17, 2008 (Tr. 152-56).  Benefits were denied
following a hearing by an Administrative Law Judge (ALJ) who
determined that Johnston was capable of performing past relevant
work as a janitor or housekeeper (Tr. 24-33).  Plaintiff
requested review of the hearing decision (Tr. 13-20) by the
Appeals Council, but it was denied (Tr. 1-4).

2

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Johnston alleges that:  (1) The ALJ did not properly consider the opinions and conclusions of her treating physician; (2) the ALJ did not properly consider her obesity; (3) the ALJ improperly discredited her testimony; and (4) she is unable to perform light work (Doc. 13).  Defendant has responded to—and denies— these claims (Doc. 14).  The relevant medical evidence of record follows.

On September 17, 2008, Johnston was examined by Psychologist Nina E. Tocci who found her posture and gait normal and her motor activity unremarkable; her affect was appropriate, normal, and stable (Tr. 244-48).  Plaintiff was oriented in four spheres; thought content was appropriate to mood and circumstances.  Johnston told that Tocci that "[s]he has crying spells everyday, prefers to isolate, and has difficulty getting to sleep and staying asleep secondary to auditory hallucinations" (Tr. 247).  Johnston seemed to have average range of intelligence.  Tocci diagnosed Plaintiff as having bipolar disorder with a guarded prognosis.  The Psychologist's examination summary was as follows:

The mental status examination revealed

3

a 40-year-old woman in some distress.  Mrs.
Johnston reported that she experiences
episodes of leaving home, driving to distant
locations, arriving to the locations, but
not able to comprehend her goal or purpose,
feelings of euphoria with grandiosity about
her finances, expansive mood, lack of sleep,
and auditory hallucinations.  Her erratic
behavior contributed to a felony conviction.
Mrs. Johnston served about two years in
prison and was recently released.  She was
given psychotropic medication while in
prison but is not able to afford refills.
It is important to note that her medication
regime is not one that should be
discontinued abruptly.  Without appropriate
and immediate treatment, she will continue
to have difficulty making appropriate
decisions, maintaining her self and her
children, and performing job tasks with
consistency.

(Tr. 248).

A psychiatric review technique form was completed by non-examining Psychologist Donald E. Hinton on September 25, 2008 in which he indicated that Johnston suffered from an affective disorder (bipolar disorder) which would mildly restrict her activities of daily living, cause moderate difficulties in maintaining social functioning and cause moderate difficulties in maintaining concentration, persistence, or place (Tr. 249-62).  Hinton also completed a mental residual functional capacity (hereinafter *RFC*) assessment in which he indicated that Plaintiff would be moderately limited in her ability to

4

understand and remember detailed instructions, carry out
detailed instructions, maintain attention and concentration for
extended periods, interact appropriately with the general
public, and respond appropriately to changes in the work setting
(Tr. 263-66).  It was also the Psychologist's opinion that
Johnston should have minimal contact with the general public and
there should be only infrequent changes in the workplace.

On October 4, 2008, Plaintiff was seen by Dr. Malaika
Hakima who noted a "relatively normal, sort of a waddle gait
secondary to obesity" before the examination while during the
examination, it was a slow, guarded, waddling gait (Tr. 269; *see
generally* Tr. 268-71).  Johnston could squat halfway down.  The
doctor made detailed notes regarding range of motion
(hereinafter *ROM*) measures in the spine, hips, knees, ankles,
shoulders, elbows, and wrists; Hakima noted "paravertebral
muscle spasms in the lumbar area, mostly on the right side and
some trigger point tenderness in the trapezius area on the right
side" (Tr. 270).  Plaintiff had full strength in the right hand,
but only 3/5 in the left; muscle bulk, tone and strength were
within normal limits for all extremities.  There was decreased
pinprick sensation in both lower and in the upper left
extremity; deep tendon reflexes were normal in all extremities.

5

The doctor's diagnosis was "[r]ecurrent muscle spasms of the lumbar spine with chronic low back pain and cervical radiculopathy, probably secondary to degenerative disk disease" (Tr. 270).

On November 4, 2008, x-rays showed mild degenerative changes in the lumbar spine; the cervical spine was normal (Tr. 273-74).

On November 18, 2008, a physical RFC was completed by a non-medical, non-examining Decisionmaker on behalf of the Social Security Administration which indicated that Johnston was capable of lifting and carrying up to fifty pounds occasionally and up to twenty-five pounds frequently (Tr. 276-83).  It was opined that Plaintiff could stand, walk, or sit up to six hours in an eight-hour day; she would be able to use both foot and hand controls.  The Decisionmaker indicated that Johnston could balance, kneel, crouch, and crawl frequently and climb stairs or stoop occasionally, but could never climb a ladder or scaffolding.

Plaintiff was seen at the Mobile County Board of Health on March 5, 2009 by Dr. Thomasina H. Sharpe for complaints of neuropathic pain and arthralgias (Tr. 285-96).  Sharpe noted that Johnston was in no acute distress; a motor exam

6

demonstrated no dysfunction.  The doctor's assessment was knee
joint pain, elevated blood pressure, menopausal disorder,
hyperlipoproteinemia, morbid obesity, diabetic peripheral
neuropathy type II, arthropathy, backache, and neuralgia (Tr.
291-92).  On April 2, 2009, Dr. Sharpe again noted no acute
distress and that everything was normal (Tr. 288-89).  On May
15, Johnston reported that she was not feeling tired or poorly,
had no headaches, chest pain or discomfort, no abdominal pain or
localized joint pain, and was not depressed; the doctor's
assessment was esophageal reflux, irritable bowel syndrome, and
inflammatory myopathy (myositis) (Tr. 287-88).  On September 4,
2009, Sharpe noted pain localized to one or more joints,
esophageal reflux, hypersecretory gastropathy, menopausal
disorder, and inflammatory myopathy (Tr. 285-86).  On October
23, Johnston complained of right leg pain; the doctor noted left
hip pain on ambulation and made the following assessment:
backache, bipolar disorder (manic with psychotic features), and
anxiety disorder NOS (Tr. 301-02).  On December 17, 2009, Dr.
Sharpe completed a physical capacities evaluation (hereinafter
*PCE*) in which she indicated that Plaintiff was capable of
lifting and carrying up to twenty pounds occasionally and ten
pounds frequently and that she could sit for four hours and

stand or walk for two hours during an eight-hour day (Tr. 299).
The doctor further found that Johnston was capable of gross and
fine manipulation frequently and that she could use arm and leg
controls, climb ladders, balance, bend, stoop, and reach
occasionally; she could only rarely operate a motor vehicle and
could never work with or around hazardous machinery.  Sharpe
indicated that Plaintiff's impairments would cause her to miss
more than four days per month; she specifically listed
Johnston's impairments as borderline diabetes, bipolar disorder,
chronic pain, arthritis, neuralgia, possible fibromyalgia, and
irritable bowel syndrome.  The doctor also completed a pain form
which stated that Johnston experienced pain to an extent that it
distracted her from daily activities, that physical activity
would greatly increase her pain, and that pain medication side
effects would limit her effectiveness at work (Tr. 298).

    At the hearing before the ALJ, Johnston testified that she
was forty-two years old, five foot, four inches tall, and
weighed 232 pounds; although she had a driver's license, she was
unable to drive (Tr. 40-42).  She had received an associate
degree from the Southeast College of Technology in medical
assisting; she had an additional sixty-four hours of classes in
nursing at Bishop State (Tr. 44-45).  She stated that her memory

is bad and that she could not remember her medical problems on some days (Tr. 46).  Plaintiff had work experience as a contract laborer, a janitor doing both light and heavy labor, and a nursing assistant (Tr. 47-52).  Johnston stated that she was being treated for fibromyalgia, arthritis, lower back pain, problems with her legs and back, and bipolar manic depression (Tr. 54).  She took medications for her psychological problems which affected her ability to concentrate but she had quit seeing the psychiatrist and taking those medications several years earlier (Tr. 55-56).  Plaintiff takes Neurontin[1] and monthly shots of Darvocet[2] and Flexeril[3] for her fibromyalgia (Tr. 58).  Johnston testified that she can sit for thirty to forty minutes, walk only about twenty minutes because of pain in her right hip and leg and lower back; she can stand for fifteen minutes (Tr. 61-62, 65).  Johnston testified that she stayed in bed most of the time; she does not clean, cook, do laundry, or shop (Tr. 65).  She only leaves the house once a month (Tr. 66).

---

[1] **Error! Main Document Only.** *Neurontin* is used in the treatment of partial seizures.  *Physician's Desk Reference* 2110-13 (52nd ed. 1998).

[2] **Error! Main Document Only.** Propoxyphene napsylate, more commonly known as Darvocet, is a class four narcotic used "for the relief of mild to moderate pain" and commonly causes dizziness and sedation. *Physician's Desk Reference* 1443-44 (52nd ed. 1998).

[3] **Error! Main Document Only.** Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

Plaintiff can lift about ten pounds (Tr. 67).  She stated that
her pain medications cause memory loss, dizziness, drowsiness,
and forgetfulness (Tr. 67).  She has depression ten-to-twelve
days a month where she does not get out of bed and cries all day
long; she is unable to dress herself (Tr. 67).  When Plaintiff
is undergoing the manic side of her disorder, she has auditory
hallucinations telling her to hurt herself or family members
(Tr. 68).

After summarizing the medical evidence of record, the ALJ
determined that Plaintiff had the residual functional capacity
(RFC) to perform a reduced range of light work and could do some
of her previous work (Tr. 28, 33).  The ALJ determined that
although Johnston had impairments, her testimony regarding her
limitations was not credible (Tr. 29, 32).  The ALJ gave
significant weight to the opinion of the non-medical, non-
examining Decisionmaker and the non-examining Psychologist
Hinton; he discredited the opinions of Dr. Sharpe (Tr. 31-32).
This concludes the evidence of record.

In bringing this action, Plaintiff first claims that the
ALJ did not properly consider the opinions and conclusions of
her treating physician, Dr. Sharpe (Doc. 13, pp. 6-10).  The
Court notes that "although the opinion of an examining physician

10

is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[4] *see also* 20 C.F.R. § 404.1527 (2011).

The ALJ, in rejecting Dr. Sharpe's opinion, stated as follows:

> This opinion is not well supported by the doctor's examination/treatment notes. Dr. Sharpe provided very conservative treatment in the form of analgesics and anti-inflammatory medication (*See* Exhibits 10F and 11F). Dr. Sharpe never recommended physical therapy, rehabilitation, surgery or any other more aggressive treatment. *Id*. This opinion is not consistent with the medical evidence as a whole, which indicates the claimant went more than 10 years without treatment and only began receiving conservative treatment after she applied for benefits in this case. This opinion is not consistent with the opinion of the State agency disability consultant. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.

---

[4]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

(Tr. 31).[5]  The ALJ also pointed out inconsistencies in Dr. Sharpe's notes and her conclusions and that "very few of Dr. Sharpe's treatment notes reflect objective clinical observations and none include laboratory test results" (Tr. 29).

The Court finds substantial support for the ALJ's discrediting of Dr. Sharpe's conclusions as the doctor's medical notes do not support the limitations suggested.  Sharpe regularly reported that Plaintiff was in no acute distress; furthermore, the physician's records do not support the extreme pain suggested by Sharpe.  Finally, the Court notes that the ALJ's determination of Johnston's RFC does not vary from Sharpe's physical capacities evaluation to a great degree (*see* Tr. 28; *cf.* Tr. 299) and is consistent with the reports of Dr. Hakima and the non-examining, non-medical Decisionmaker.[6]  Plaintiff's claim is without merit.

Johnston also claims that the ALJ did not properly consider

---

[5]The ALJ went on to provide theories as to other possible reasons for Dr. Sharpe's conclusions, but the Court finds no purpose in discussing the ALJ's speculation (*see* Tr. 31).

[6]The Court is aware that the ALJ gave significant weight to the opinion of the Decisionmaker (Tr. 31).  The Court is also aware that the opinion of a nonexamining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision."  *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).  Nevertheless, the Court finds, that the ALJ's determination in this regard was, at most, only harmless error as there was other evidence to support the ALJ's opinion.

her obesity (Doc. 13, pp. 15-17).  In Social Security Ruling (hereinafter *SSR*) 02-1p, the Social Security Administration issued a ruling entitled *Evaluation of Obesity* which examines the analysis for determining the following:  whether a person is obese (based on a formula known as the Body Mass Index); whether the obesity is a medically determinable impairment; and whether the obesity is severe.  The latter determination is made by determining whether "it significantly limits an individual's physical or mental ability to do basic work activities."  SSR 02-1p.

The Court notes that the ALJ found that Johnston's obesity was a severe impairment (Tr. 26).  He went on to cite SSR 02-1p and state that he had considered "the impact obesity has on limitation of function including the claimant's ability to perform routine movement and necessary physical activity within the work environment;" he also noted that the combination of impairments might be greater than their sum individually (Tr. 29).  The ALJ, nevertheless, concluded that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 414.1520(d), 404.1525 and 404.1526)" (Tr. 26).

The Court notes that this specific language has been upheld by the Eleventh Circuit Court of Appeals as sufficient consideration of the effects of the combinations of a claimant's impairments. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (the claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4"). The Court further notes that no doctor has specifically linked Plaintiff's obesity to an inability to work. As Plaintiff is ultimately responsible for proving disability, *i.e.*, an inability to work, *see* 20 C.F.R. § 404.1512(a) (2011); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Court can find no error in the ALJ's stating that he considered Johnston's obesity and finding that she had not demonstrated an inability to work.

Plaintiff also claims that the ALJ improperly discredited her testimony. More specifically, Johnston asserts that the ALJ erred in finding that her daily activities and lack of treatment disqualify her from disability consideration (Doc. 13, pp. 17–20).

In his determination, the ALJ noted that the Plaintiff's allegations of constant neck and low back pain were unsupported

14

by the medical evidence, specifically noting that Dr. Sharpe's examination notes did not support her complaints of pain even on the dates that she specifically complained of pain (Tr. 29). The ALJ further noted that there was a ten-year gap in medical evidence and no evidence of treatment until after she sought disability even though the precipitating event, a motor vehicle accident, had occurred fifteen years earlier (Tr. 29, 32).  The ALJ also noted Johnston's seemingly malingering behavior reflected in the examination notes of Dr. Hakima (Tr. 30).  The ALJ noted that Plaintiff was getting no treatment for her bipolar disorder and that the conclusions reached by consultative Psychologist Tocci seemed to be based on subjective complaints (Tr. 30).  The ALJ noted inconsistencies in the Plaintiff's reporting of her daily activities over a very short period of time (Tr. 32).  The ALJ also noted that Johnston's asserted disability date was at a time when she was in prison and was connected to no particular medical event (Tr. 32).

    The Court finds substantial support for the ALJ's rejection of Plaintiff's testimony regarding her impairments.  The ALJ correctly noted inconsistencies in the activities of daily living.  The ALJ correctly noted a lack of treatment.  What is more important, though, is that the ALJ's determination that the

medical evidence did not support Johnston's assertions of severe

limitations is supported by substantial evidence.

Plaintiff's final claim is that she is unable to perform

light work (Doc. 13, pp. 10-14).  Light work has been defined as

follows:

> Light work involves lifting no more
> than 20 pounds at a time with frequent
> lifting or carrying of objects weighing up
> to 10 pounds.  Even though the weight lifted
> may be very little, a job is in this
> category when it requires a good deal of
> walking or standing, or when it involves
> sitting most of the time with some pushing
> and pulling of arm or leg controls.  To be
> considered capable of performing a full or
> wide range of light work, you must have the
> ability to do substantially all of these
> activities.  If someone can do light work,
> we determine that he or she can also do
> sedentary work, unless there are additional
> limiting factors such as loss of fine
> dexterity or inability to sit for long
> periods of time.

20 C.F.R. § 404.1567(b) (2011).

In his decision, the ALJ determined that Plaintiff had the

residual functional capacity (RFC) to perform light work except

that she was "limited to work which will only require the

claimant to:  understand, remember and carry out short/simple

instructions for at least 2 hour periods without special

supervision in a traditional work environment; have minimal

contact with the general public; and adjust to infrequent changes in the workplace" (Tr. 28).

In arguing this claim, Johnston relies on the PCE completed by Dr. Sharpe and the fact that the ALJ gave significant weight to the opinion of the non-medical, non-examining Decisionmaker (Doc. 13, pp. 10-14). However, the Court has previously found substantial support for the ALJ's rejection of the limitations suggested by the treating physician (*see* pp. 10-12). The Court has also found that the ALJ's reliance on the opinion of the Decisionmaker to be only harmless error as there was other evidence of record to support his decision (*see* p. 12, n.6). The Court finds it unnecessary to revisit those particular arguments here. Plaintiff has not demonstrated that she is unable to perform light work.

The Court acknowledges the scant amount of evidence in this record. Nevertheless, the Court found substantial evidence to support the ALJ's rejection of Dr. Sharpe's conclusions of extreme limitations as well as Johnston's own testimony regarding her abilities. As noted before, ultimately the burden is on Plaintiff to prove that she is disabled. *See* 20 C.F.R. § 416.912(a) (2011); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). She has not met this burden.

17

Johnston has raised four different claims in bringing this action.  All of those claims are without merit.   Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980) and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 11th day of July, 2012.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE